Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4546 | **DATE** | 2/25/2002 |
| **CASE TITLE** | John E. Gibbs vs. A. Finkl & Sons, Co., | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, the defendant's motion for summary judgment is granted against all counts of the plaintiff's complaint. [Doc. # 31]. Any pending motions are now moot and terminated. This action is closed.

(11) ■ [For further detail see

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel by telephone. Copies picked up by parties | FEB date docketed 2002 | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| vg(lc) | courtroom deputy's initials | 02 FEB 25 PM 4:43 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| John E. Gibbs, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No: 00 C 4546 |
| v. | ) | |
| | ) | HONORABLE DAVID H. COAR |
| A. Finkl & Sons Co., | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED FEB 26 2002

## MEMORANDUM OPINION AND ORDER

Before this court is defendant's, A.Finkl & Sons Co. ("Finkl"), motion for summary judgement against plaintiff's, John E. Gibbs ("Gibbs") complaint alleging violations under the Americans with Disabilities Act ("ADA"), the Employee Retirement Income Security Act ("ERISA"), the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), and the Family and Medical Leave Act ("FMLA"). For the following reasons, the defendant's motion is granted.

### Statement of Facts

Gibbs was employed by Finkl form May 25, 1971 to April 26, 1999. At that time Gibbs was discharged, he was an "A" machine operator which required him to run a variety of different machines.

In May 1994, Gibbs learned that a co-worker, Byron Martini ("Martini"), sustained an injury to his dominant hand allegedly while at work. From May 1994 through September 9,

1

1994, Gibbs intervened on behalf of Martini with regard to employment issues related to his injury.

In December 1997, Gibbs underwent foot surgery and missed four months of work. On September 30, 1998, Gibbs complained that his bad feet and arthritis prevented him from working in the capacity that Finkl desired. Gibbs was treated by Dr. Khuans ("Khuans") at the Veterans' Hospital on October 2, 1998 for osteoarthritis of his left foot and pain in his hands, shoulders, feet and knees.

In addition to arthritis, Gibbs testifies that he would rant and rave over nothing and that he was unable to communicate without flying off the handle. Gibbs also states that he had trouble sleeping.

Gibbs met with Steve Witek ("Witek"), Vice President of Operations, in late 1998 or early 1999 and gave him a pamphlet regarding Post-traumatic Stress Disorder ("PTSD"). Gibbs told Witek that the pamphlet might explain why Gibbs was "flying off the handle." Two to three weeks later, Witek returned the pamphlet to Gibbs and told Gibbs that it was all "propaganda".

On April 26, 1999, Gibbs was approached by his supervisor, Dusan Ilich ("Ilich"), and told to operate drill machine #3622. Gibbs had never been trained on machine #3622. James True, one of the people who regularly operated machine #3622, was present at work on April 26, 1999. True was operating a machine on which Gibbs had been trained. Gibbs requested to be put on a machine that he knew how to operate. That same day, Gibbs told Ilich that he had stomach problems and that he was not "mentally there". Gibbs told Wojtczak that he was not mentally or physically able to learn how to operate the drill.

Gibbs was terminated later that day for insubordination. On June 8, 1999, Gibbs

2

complained to the VA of symptoms of PTSD. On May 22, 2000, the VA determined that Gibbs had suffered from PTSD since January 14, 1999.

On April 26, 2001, Gibbs filed a seven count Amended Complaint alleging that Finkl (1) failed to provide reasonable accommodation in violation of the Americans with Disabilities Act; (2) discriminated against Gibbs in violation of the Americans with Disabilities Act; (3) retaliated against Gibbs in violation fo the Americans with Disabilities Act; (4) violated Section 502 of the Employee Retirement Income Security Act ("ERISA"); (5) violated ERISA Section 510; (6) violated the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"); and (7) retaliated against for requesting leave under the Family and Medical Leave Act ("FMLA").

**Analysis**

I. ADA Claims

The ADA provides that an employer shall not "discriminate against a qualified individual with a disability." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

A plaintiff can prove discrimination by either direct or circumstantial evidence that he was fired because of his disability. DeLuca v. Winer Industries, Inc., 53 F.3d 793, 797 (7th Cir. 1995). The prima facie case requires a plaintiff to prove that (1) he is a member of a protected class; (2) his work performance met the employer's legitimate job expectations; (3) his employment was terminated; (4) employees not in the protected class were treated more favorably. Oxman v. WLS-TV, 846 F.2d 448, 455 (7th Cir.1988). Once a plaintiff establishes all

3

four elements the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for firing the plaintiff. If the defendant meets this burden, the plaintiff must then prove that the employer's stated reason is merely a pretext for discriminatory action, either "directly with evidence that [the employer] was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible." DeLuca, 53 F.3d at 797. The ultimate burden of persuading the trier of fact that the defendant intentionally engaged in discrimination rests with the plaintiff.

    A.    Disability Under the ADA

Gibbs alleges that he is disabled under the ADA due to his arthritis, post-traumatic stress disorder ("PTSD") and degenerative disk disease. The defendant argues that Gibbs is unable to bring his complaint against Finkl because Gibbs is not disabled within the meaning of the ADA, or alternately, Gibbs cannot establish a prima facie case for disability discrimination. This court agrees.

Under the ADA, a person is "disabled" if he (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2); see also Mattice v. Memorial Hosp. of South Bend, Inc., 249 F.3d 682, 684 (7th Cir. 2001). The interpreting regulations define "physical impairment" as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine." 29 C.F.R. § 1630.2(h)(1). Major "life activities" means functions such as caring for

oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 CFR § 1630.2. The Equal Employment Opportunity Commission ("EEOC") regulations interpreting the Act define "[m]ajor [l]ife [a]ctivities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "Substantially limits" means that the person is either "[u]nable to perform a major life activity" or is "significantly restricted as to the condition, manner or duration" under which the individual can perform the major life activity as compared to the average person in the general population. Id. at § 1630.2(j)(1). In determining whether an individual is substantially limited in a major life activity, the EEOC regulations instruct that the following factors should be considered: "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." §§ 1630.2(j)(2)(i)-(iii).

If Gibbs' condition does not rise to the level of a disability, then he cannot recover under the Act even if Finkl terminated him. "The Act is not a general protection of medically afflicted persons.... [I]f the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, but not disabled, there is no violation." Christian v. St. Anthony Med. Ctr., Inc., 117 F.3d 1051, 1053 (7th Cir.1997), cert. denied, 523 U.S. 1022, 118 S.Ct. 1304, 140 L.Ed.2d 469 (1998).

Here Gibbs argues that his physical and mental impairments substantially limit major life

5

activities sleeping and learning.[1] Gibbs claims that as a result of his arthritis, PTSD, and degenerative disk disease, he is unable to concentrate and has had difficulty learning new tasks. Further, Gibbs alleges that as a result of all of these conditions he had difficulty sleeping on a nightly basis.

Gibbs, however, fails to present any medical or other evidence showing that his alleged impairments are caused by his difficulties in sleeping or learning. The only reference to any objective medical evaluation is a determination by a physician at the Veteran's Hospital (VA) on May 22, 2000 that Gibbs had suffered from PTSD since January 14, 1999. The evaluation itself, however, has not been presented to this court. Without any evidence that Gibbs' impairments substantially limited his ability to sleep or learn, this court has cannot assess whether the plaintiff was disabled as defined by the ADA . See Groark v. City of Chicago, 2000 U.S. Dist. Lexis 20487 (N.D. Ill. 2000); Kolecyck-Yap v. MCI Worldcom, 2001 U.S. Dist. Lexis 2558 (N.D. 2001). Even viewing all evidence in a light most favorable to the plaintiff, this court finds that the plaintiff has not established that his impairments substantially limited him in any major life activities.

B.   Regarded As Having a Disability Under the ADA

In the alternative, Gibbs argues that he was regarded as disabled as therefore is entitled to protection under the ADA. This court disagrees.

The ADA also provides protection to persons who are regarded as having an impairment,

---

[1] According to the Plaintiff's Response to Defendant's Motion for Summary Judgment, the plaintiff does not seek to argue that he was substantially limited in the major life activity of working.

even if the person does not otherwise qualify as disabled. Johnson v. Am. Chamber of Commerce Publishers, 108 F.3d 818 (7th Cir. 1997).

To defeat Finkl's motion for summary judgment, Gibbs must establish that there is a factual dispute about whether his employer regarded his impairments as being substantially limiting. Gibbs asserts that it was generally known by Finkl management that Gibbs was suffered from stress due to his experience as a Vietnam veteran, and therefore Gibbs speculates that Finkl or Finkl's management knew that Gibbs suffered from PTSD at the time of his termination. It does not necessarily follow, however, that Finkl or Finkl's management assumed Gibbs had a disability. Gibbs' status as a veteran, in and of itself, does not signal the existence of a disability. Because a "plaintiff's speculation is not a sufficient defense to a summary judgment motion," Gorbitz v. Corvilla, Inc., 196 F.3d 879 (7th Cir. 1999), Gibbs' speculation about what Finkl's management might have believed does not create a genuine issue of fact. Id at 882. Indeed, it would appear from Witek's reaction to the PTSD pamphlet that he did not believe that Gibbs suffered from PTSD or that PTSD explained Gibbs' behavior.

Accordingly, Gibbs has failed to demonstrate that there is a factual dispute about whether he is disabled within the meaning of the ADA. Because Gibbs has failed to establish a prima facie case of discrimination, this court grants defendant's motion for summary judgement against Gibbs' complaint.

C. Retaliation Claim

Gibbs argues that he was terminated in retaliation for submitting an affidavit in support of a discrimination case brought by a former co-worker, Martini. This court disagrees.

To establish a prima facie case of retaliation under the ADA, Gibbs must prove by a

preponderance of the evidence that (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment action, and (3) a causal nexus exists between the protected activity and the adverse action. Dey v. Colt Construction and Development Co., 28 F.3d 1446, 1457 (7th Cir. 1994 )

In this case, the plaintiff has not presented any evidence to support his claim that a causal nexus exists between his termination and his affidavit in the Martini lawsuit. There is nothing about the timing of the termination to suggest a causal connection. Gibbs' actions on behalf of Martini occurred in 1994. Gibbs was terminated in 1999. Therefore, even viewing the evidence in a light most favorable to Gibbs, he is unable to demonstrate the existence of a genuine issue of material fact.

II.  ERISA Claims

  A.  Notice

Gibbs claims that neither he nor his wife received any notices with regard to their rights under COBRA. This claim is not supported by the evidence.

COBRA, 29 U.S.C. § 1001, et seq, requires employers to provide notices regarding employees' rights under COBRA and cancellation of employees' health insurance. Failure to provide such notices is a violation of COBRA. 29 U.S.C. § 1166.

Although neither the Supreme Court nor the Seventh Circuit has addressed the issue, federal courts in this district have held that "a good faith attempt to comply with a reasonable interpretation of the statute is sufficient" to satisfy COBRA requirements. Keegan v. Bloomingdales, 992 F.Supp. 974, 977 (N.D. Ill. 1998). Thus, the issue is not whether the former employee actually received notice; the issue is whether the plan administrator "caused the notice

to be sent in a good faith manner reasonably calculated" to reach the former employee. Id. . This court agrees that a good faith attempt to comply with a reasonable interpretation of the statute is sufficient to satisfy COBRA requirements and that proof of receipt is not required.

Notification methods that are reasonably calculated to reach the former employee satisfy the standard of good faith compliance with the statute. Id. at 978. Notice by first class mail addressed to the former employee's last known address, the method selected in the present case, is an acceptable method of notification. Id.

Several courts deciding the COBRA notification issue have found that testimony regarding standard operating procedures and evidence that the procedures were consistently followed were sufficient to satisfy the good faith standard. In Jachim v. KUTV Inc., 783 F.Supp. 1328 (D.Utah 1992), the court found as a matter of law that the defendant had satisfied its statutory obligation by sending timely notice of COBRA rights via first class mail to the defendant's last known address. Id. at 1334.

In this case, the defendant has met its burden under COBRA. Norma Vasquez ("Vasquez"), Benefits Administrator, testified at her deposition to Finkl's standard office procedure regarding COBRA notification. Specifically, she testified that the computer records confirm that a COBRA notice was generated on May 12, 1999 and Vasquez specifically recalls sending this COBRA notice to Gibbs on or about that date. Vasquez also testified that she mailed Gibbs the COBRA notice in accordance with Finkl's standard procedures. Vasquez's testimony coupled with the fact that Finkl's mailed the notification to Gibbs, first class mail, to his last known address, demonstrates that Finkl met its burden under COBRA.

9

B.  Section 502

Gibbs argues that his allegedly unlawful termination caused him to lose pension benefits.

Under ERISA Section 502(a)(1)(B), a benefit plan participant may bring an action "to recover benefits under the terms of the plan." 29 U.S.C. §11329a)(1)(B). Count IV of Gibbs' Amended Complaint fails for two reasons. First, a plaintiff may only bring suit against the plan administrator and not the employer under Section 502(a)(1)(b). Consequently, Finkl is an improper defendant. Second, Gibbs does not allege that the plan administrator erred in calculating the benefit to which he is entitled under the Finkl Pension Plan, rather, as the defendant points out, Gibbs claims that his termination caused him to lose pension benefits because it shortened the amount of time during which he could accrue benefits. If Gibbs was wrongfully terminated his damages would include among other things, any pension contributions that he lost as a result. This court has concluded that the termination was not wrongful, and Gibbs has not asserted an independent basis for recovery, therefore the defendant's motion for summary judgement is granted on this claim.

III. FMLA Claim

Gibbs argues that he was terminated in retaliation for taking leave under the FMLA. This court disagrees.

To establish a prima facie case of FMLA retaliation, the plaintiff must establish the following by a preponderance of the evidence: (1) as an employee, he engaged in a protected activity; (2) his employer took adverse employment action against him; and (3) there is a causal connection between the employee's protected activity and the employers' adverse employment action. King v. Preferred Technical Group, 166 F.3d 887, 891-892 (7th Cir. 1999). Given that

Gibbs has not bothered to address the defendant's argument, this court's review of the evidence has not uncovered any proof demonstrating a causal connection between his termination and any leave he took due to illness. Consequently, the defendant is granted summary judgement on the plaintiff's FMLA claim.

## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment is granted against all counts of the plaintiff's complaint.

Enter:

*David H. Coar*

David H. Coar

United States District Judge

Date: February 25, 2002

11